UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

DENNIS J. WILLARD,

        Plaintiff,

vs.

HUNTINGTON FORD, INC.,
a Michigan corporation,

        Defendant.

Case No.
Hon.

_____/
Raymond J. Sterling (P34456)
Brian J. Farrar (P79404)
Attorneys for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
rsterling@sterlingattorneys.com
bfarrar@sterlingattorneys.com
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff Dennis J. Willard, by his attorneys, Sterling Attorneys at Law, P.C., for his Complaint and Jury Demand against defendant submits the following:

### JURISDICTIONAL ALLEGATIONS

1. This is an action for age discrimination in violation of the Age Discrimination in Employment Act, 29 USC 623(a) *et seq.*, and age discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act,

MCL 37.2101 *et seq.*, arising out of plaintiff's employment relationship with defendant.

2. Plaintiff is an individual residing in Almont, Michigan, within the Eastern District of Michigan.

3. Defendant Huntington Ford, Inc. ("Huntington") is a Michigan corporation that conducts business and maintains its principal place of business in Rochester Hills, Michigan, within the Eastern District of Michigan.

4. Defendant Huntington is an employer as defined by the Age Discrimination in Employment Act, 29 USC 623(a), *et seq.,* and the Elliott-Larsen Civil Rights Act ("Elliott-Larsen"), MCL 37.2101 *et seq.*

5. This Court has federal question jurisdiction under 28 USC 1331 because this action arises under the laws of the United States.

6. This Court has supplemental jurisdiction over plaintiff's state law claims under 28 USC 1367(a).

7. Venue is proper in this district under 28 USC 1391(a)(2) and (b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district.

8. Plaintiff timely files this complaint within 90 days of receiving his EEOC right to sue notice, which was mailed to him on or about November 1, 2017.

## GENERAL ALLEGATIONS

### Plaintiff was one of the oldest and most successful new car salespeople

9. Plaintiff was born in 1953; he is 64 years old.

10. In February 2005, defendant hired plaintiff as a new car salesperson.

11. Throughout his employment with defendant, plaintiff performed his job duties in a manner that was satisfactory or better.

12. During each of the last 10 years of his employment with defendant, plaintiff sold the second most new cars out of approximately 22 salespeople.

13. Ford Motor Company awarded plaintiff the prestigious Level 3 Award for excellent sales and customer service.

14. Plaintiff ranked in the top 100 nationally among Ford salespeople based on his sales figures and customer satisfaction.

### Despite his excellent performance record, plaintiff is pressured to retire

15. In early 2016, several of plaintiff's supervisors, including defendant's General Manager, Brad Schiller ("Schiller") and defendant's Sales Manager, Eric Calhoun ("Calhoun"), started asking plaintiff when he was going to retire and told him he was "too old," to be working there.

16. During a discussion about getting financing for one of plaintiff's customers, Calhoun, told plaintiff he should retire because "not many

3

dealerships are looking to hire a 65 year-old, over-the-hill salesman" like plaintiff.

17. Calhoun said this in front of other employees who laughed at plaintiff.

18. Defendant's owner, Pat Scoggin, repeated the phrase "over the hill" in reference to plaintiff on numerous occasions, and told plaintiff he should have retired long ago.

19. After defendant's managers started making these ageist remarks to plaintiff, the managers stopped referring new customers to plaintiff.

20. The managers re-assigned several of plaintiff's customers to younger sales associates.

21. When plaintiff complained about this practice, Scoggin and Schiller told plaintiff that they wanted "younger" associates to handle these customers because the customers were younger and would relate better to a younger salesperson.

22. When plaintiff reminded them that he had one of the highest customer satisfaction ratings by Ford, they told him if he did not like it, he should retire.

23. In early December 2016, Schiller told plaintiff that plaintiff should not talk to new customers that walk into the showroom and should focus instead on only selling to plaintiff's current customers.

24. When plaintiff questioned this policy, Schiller told plaintiff once again that he wanted the "younger" sales associates interacting with the new customers.

25. Approximately one week later, another Sales Manager, Tony Malouf ("Malouf"), told plaintiff to move his desk from the front of the showroom to the back so that plaintiff would be less visible to new customers.

26. Malouf told plaintiff that the new customers were younger and would not like to see someone as old as plaintiff the moment they walk in.

27. Malouf told plaintiff that once plaintiff moved to the back of the showroom he would assign plaintiff's desk to another salesperson who was approximately 20 years younger than plaintiff.

28. When plaintiff reminded Scoggin, Schiller, Calhoun, and Malouf of plaintiff's successful sales records, they ignored him.

### When plaintiff refused to retire, Huntington fired plaintiff due to his age

29. On or about December 21, 2016, Scoggin and Schiller pressured another employee, who was younger than plaintiff, to file a false police report stating that plaintiff had assaulted her.

30. Scoggin and Schiller knew that plaintiff had not assaulted anyone when they told the other employee to file the report.

31. Scoggin suspended plaintiff and told plaintiff he should return to work on December 28, 2016.

32. Plaintiff stated that he had done nothing wrong and that he was being targeted because of his age.

33. When plaintiff returned to work on December 28, 2016, he noticed that his desk had been cleared out and all of his personal items were removed.

34. Defendant fired plaintiff on December 28, 2016 for allegedly not showing up to work during the suspension period.

35. Defendant's stated reason for termination was a pretext for age discrimination.

36. Plaintiff subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging that defendant discriminated against him because of his age.

## COUNT I

## AGE DISCRIMINATION – ADEA

37. Plaintiff incorporates the preceding paragraphs by reference.

38. The ADEA prohibits discrimination on the basis of age.

39. Defendant treated younger employees more favorably than plaintiff.

40. Defendant's decision to suspend and fire plaintiff, were based on impermissible considerations of plaintiff's age.

41. Defendant was predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

42. Defendant's actions were intentional and engaged in with willfully reckless disregard for plaintiff's rights.

43. As a direct and proximate result of defendant's wrongful and discriminatory treatment of plaintiff, he has suffered injuries and damages, including but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT II

### AGE DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

44. Plaintiff incorporates the preceding paragraphs by reference.

45. Michigan's Elliott-Larsen Civil Rights Act prohibits discrimination on the basis of age.

46. Defendant treated younger employees more favorably than plaintiff.

47. Defendant's decisions to suspend and fire plaintiff, were based on impermissible considerations of plaintiff's age.

48. Defendant was predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

49. Defendant's actions were intentional and engaged in with reckless disregard for plaintiff's rights.

50. As a direct and proximate result of defendant's wrongful and discriminatory treatment of plaintiff, he has suffered injuries and damages, including but not limited to, loss of past, present, and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter judgment against defendant, in whatever amount plaintiff is found to be entitled, together with reinstatement, punitive damages, interest as an element of damages, statutory interest, and attorney fees and costs.

## JURY DEMAND

Plaintiff Dennis J. Willard, by his attorneys Sterling Attorneys at Law, P.C., demands a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By: /s/Brian J. Farrar
Raymond J. Sterling (P34456)
Brian J. Farrar (P79404)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

Dated: December 28, 2017